IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STEVE RIDDICK, <br> a.k.a. STEVEN RIDDICK, | ) <br> )    CASE NO. 7:20CV00096 <br> ) |
|        Plaintiff, | ) |
| v. | )    MEMORANDUM OPINION <br> ) |
| WARDEN JEFFERY B. KISER, ET AL., | )    By: Glen E. Conrad <br> )    Senior United States District Judge |
|        Defendants. | ) |

    Plaintiff Steve Riddick, also known as Steven Riddick, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. He alleges that in February 2019, various defendants subjected him to verbal harassment and unsanitary living conditions, used excessive force against him, denied him adequate medical care, and retaliated against him. The matter is before the court this day on motions for summary judgment filed by Defendants Deborah Ball, S. Fletcher, and Wendy McCoy, and by Linda Stump. Both motions assert that Riddick's claims are barred because he failed to exhaust administrative remedies. After review of the record, the court concludes that these defendants' motions must be granted, and that Riddick's motion for summary judgment against Nurse Stump must be denied.[1]

I.

    In the amended complaint, Riddick alleges that on February 1, 2019, at Red Onion State Prison ("Red Onion"), security officers moved him into a filthy cell with no cleaning supplies or water. When he asked to be moved, an officer had him pack his personal property and then purposely damaged his JPay player, only to put him back in the dirty cell. The officers talked

---

[1] A motion for summary judgment by other defendants and Riddick's other pending motion will be separately addressed.

about his crime, threatened to "beat [his] black a**," and called him "a baby killer." Am. Compl. 8, ECF No. 13.[2] Riddick called them "cowards." Id. In response, Sergeant Mannon allegedly "sprayed one long burst of O.C. spray[3] . . . in [Riddick's] cell's vent." Id. at 9. Riddick "began coughing, choking, [and] spitting up fluid." Id. Riddick told various officers that he had asthma, had been sprayed with O.C. spray, and needed to see a nurse, but they offered no help.

After two hours, Riddick filed an Emergency Grievance asking for medical care. Around 7:00 p.m., two medical staff members, Nurse Lavinia Mullins[4] and Nurse S. Fletcher, assessed Riddick. They took his vital signs, blood pressure, and temperature. Riddick told them that he had asthma, had been sprayed with O.C. spray, and had previously been prescribed an inhaler. He claimed to be suffering from pain in his chest, face, neck, throat, stomach, and head, heart "flutter, blurry vision, lightheadedness, dizz[i]ness, shortness of breath, nausea [and] fatigue." Id. at 12. Riddick requested an inhaler. Mullins said he had been assessed, and she and Fletcher left, without providing an inhaler, referring him to a doctor, or taking him to the medical unit for an EKG. Riddick asserts that given his health history, one or more of these remedies should have been provided that day.[5]

On February 2, 2019, during morning pill pass around 6:15 a.m., Riddick asked Nurse Stump to assess him for chest pain and other symptoms. She advised him to submit an Emergency

---

[2] In this memorandum opinion, for the sake of consistency, the court uses the page numbers assigned by the court's docketing program, CM-ECF, rather than the page numbers of Riddick's handwritten pleadings.

[3] O.C. spray is a chemical agent similar to what is commonly known as pepper spray or mace; it irritates a person's eyes, throat, and nose. See, e.g., Park v. Shiflett, 250 F.3d 843, 849 (4th Cir. 2001) (describing the physiological effects of O.C. spray).

[4] The court has been unable to accomplish service of process on Mullins, who no longer works for the VDOC. Riddick has been granted until April 2, 2021, to obtain a current address for Mullins.

[5] Riddick says he has been a chronic care inmate since 2007, first for asthma and later for high blood pressure. He has been prescribed medication for the latter since February 2018, and he also has "HSVI, Herpes Simplex Virus I [and] schizophrenia, P.T.S.D., major anxiety disorder, major depressive disorder [and] personality disorder." Id. at 13-14.

Grievance. He completed a form, but an officer refused to deliver it and told Riddick to wait until a nurse returned for his psychiatric physical. Around 11:00 a.m., Nurse Stump performed the physical and then assessed Riddick for his complaint of chest pain. She did not place him on the list to see the doctor. See id. at 15-17.

On February 4, 2019, Riddick put in a sick call request, and the next day, Nurse Stump assessed him. He told her he was still experiencing the symptoms he had described to the nurses during his previous assessments on February 1 and 2, 2019. Nurse Stump did not refer Riddick to see the doctor and did not make a note of his medical complaints until he asked her to do so.

On February 6, 2019, Riddick's chronic care appointment for that day was rescheduled to February 14, 2019, allegedly to allow his symptoms to resolve in the meantime. Nurse Practitioner Ball ("NP Ball") conducted the chronic care assessment on February 14, 2019. Riddick told her that he had been sprayed with O.C. spray on February 1, 2019, was asthmatic, had fluid in his chest, and needed an inhaler, but had not received one since being sprayed. Id. at 18. NP Ball said she would order a chest X ray, but Riddick did not receive one for weeks. Nurse McCoy was also present with NP Ball. Riddick told them that he "was still having fatigue [and] occasional shortness of breath." Id. He did not receive an inhaler or any further treatment from these two defendants that day.

Liberally construing the amended complaint, Riddick asserts the following claims against the movant defendants: (1) on February 2 and 5, 2019, Nurse Stump failed to provide proper medical care; (2) on February 1, 2019, Nurse Fletcher failed to provide proper medical care; (3) on February 6, 2019, NP Ball rescheduled his chronic care visit; and (4) on February 14, 2019, NP Ball and Nurse McCoy failed to provide proper medical care. See gen. id. at 11-18, 24-25.

In support of their summary judgment motions, ECF Nos. 41 and 72, NP Ball, Nurse Fletcher, Nurse McCoy, and Nurse Stump assert that Riddick failed to exhaust available administrative remedies as to his claims against them before filing this § 1983 action, as required under 42 U.S.C. § 1997e(a). In support of their motions, they submit the declarations of T. Trapp, grievance coordinator, who is responsible for maintaining the grievance files of Red Onion inmates in the ordinary course of business. After Riddick filed a summary judgment response, ECF No. 50, the defendants filed a reply with a supplemental declaration from Trapp, ECF No. 67, to which Riddick also responded, ECF Nos. 71 and 77. Riddick has also filed a purported motion for summary judgment regarding Nurse Stump, ECF No. 101, to which she has responded, ECF No. 103. The court finds these motions to be ripe for disposition.

II.

The court should grant summary judgment only when the pleadings and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. On summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. Id. at 255.

When a motion for summary judgment is made and is properly supported by affidavits, the nonmoving party may not rest on the mere allegations or denials in his pleadings. Id. at 256. Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find in his favor. Id. at 256-57. Verified complaints by pro

se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).[6]

The Prison Litigation Reform Act ("PLRA") provides in 42 U.S.C. § 1997e(a) that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). To comply with § 1997e(a), an inmate must properly follow each step of the established grievance procedure that the facility provides to inmates and meet all deadlines within that procedure before filing his § 1983 action. See Woodford v. Ngo, 548 U.S. 81, 90–94 (2006). An "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. Id. at 83–84.

The defendants bear the burden of proving the affirmative defense that Riddick failed to properly exhaust available administrative remedies regarding his claims before filing suit. Jones, 549 U.S. at 216. If the defendants prove that Riddick did not exhaust, he may yet escape summary judgment under § 1997e(a) by showing that the remedies under the established grievance procedures were not "available" to him. Ross v. Blake, 136 S. Ct. 1850, 1859 (2016) (noting that circumstances making prison grievance procedures unavailable "will not often arise"). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

---

[6] The court has omitted internal quotation marks, alterations, and/or citations here and throughout this opinion, unless otherwise noted.

Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints. See gen. Mem. Supp. Mot. Summ. T. Trapp Decl. ¶¶ 6-13, ECF 42-1; Mem. Supp. Mot. Summ. J. Ex. A, Trapp Decl. ¶¶ 4-16 and Ex. A, ECF No. 73-1. The VDOC grievance procedure requires that, before submitting a formal grievance, an inmate must demonstrate that he has made a good faith effort to informally resolve his complaint. He may do so by submitting an Informal Complaint form to the appropriate department head. Staff should respond in writing on the form within fifteen days. If the inmate is dissatisfied with the response, he must submit a Regular Grievance on the issue within thirty days after the event of which he complains, attaching the Informal Complaint.

Specifically, OP 866.1(VI)(A)(1) provides that "[g]rievances are to be submitted within 30 calendar days from the date of occurrence/incident or discovery of the occurrence/incident." The procedure does not provide for the tolling or extension of grievance deadlines if an inmate has not received the requested treatment or resolution of his complaint. A grievance is defined by OP 866.1(III) as "[a]n unresolved issue"; as such, the grievance procedure is intended as a remedy an inmate may use to seek resolution of a problem that has not already been adequately addressed through informal means.

A Regular Grievance that meets the filing criteria under OP 866.1 will be logged into the computer database on the day it is received. If the Regular Grievance does not meet the filing requirements, a grievance official will complete the "intake" section on the back of the Regular Grievance form, mark the reason for the rejection (such as an expired time limit or raising more than one issue), and return the Regular Grievance to the inmate with instructions on how to correct and resubmit the form, if feasible. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman within five calendar days. However,

pursuing that intake appeal alone does not constitute exhaustion. Rather, to satisfy the exhaustion requirement, the grievance must be accepted into the Regular Grievance process and appealed through the highest available level of review.

Once a Regular Grievance is accepted for review, officials investigate the inmate's contentions, and the warden or his designee will issue a Level I written response. If dissatisfied with that response, the inmate may appeal for Level II review. All accepted Regular Grievances can receive these two levels of review, and some are eligible for a Level III review.

An inmate may also file an Emergency Grievance when he believes his situation places him at an "immediate risk of serious personal injury or irreparable harm." Trapp Decl. at ¶ 11, ECF No. 42-1. Filing an Emergency Grievance does not satisfy the exhaustion requirement of § 1997e(a), because the procedure for filing a Regular Grievance and appeals is still available.

To ensure that all inmates can utilize administrative remedies in a timely manner, inmates must "use those procedures in good faith for problem resolution." Id. at ¶ 12. Inmates "who abuse the grievance procedures by excessive filings or habitual misuse of the procedure hinder other [inmates'] access and impede staff's ability to investigate and resolve complaints within specified time limits." Id. If an inmate has abused his access to the grievance procedures, the warden may limit his access.

> A face-to-face interview should be conducted prior to initially placing an [inmate] on limitation status. If the Facility Unit Head determines an [inmate's] access should be limited, an [inmate] may be limited to no less than one informal complaint and one regular grievance per week. Each period of limitation should last no longer than ninety days. The [inmate] will be notified in writing of the reason for the limitation, the number of informal complaints and grievances he is limited to, and the period of limitation. Informal complaints and grievances submitted in excess of the limitation will be returned to the [inmate] without a response. An inmate can grieve the limitation decision and does not need to submit an informal complaint to do so.

Id. at ¶ 13.

Informal Complaints and Regular Grievances are processed by staff on the date when they are received by the Grievance Department. If such a filing is rejected because it exceeds the inmate's Grievance Limitation for the week, he may resubmit that filing the following week. Regular Grievances that are rejected at intake for whatever reason do not count toward the filing limit for that week. The inmate may correct the intake problem, if possible, and resubmit the corrected form, or he may submit a different Regular Grievance that week. See Trapp Decl. ¶¶ 23, 25, ECF No. 73-1.

Trapp's review of Riddick's grievance file at Red Onion reflects that he did not properly follow all stages of the grievance procedure, regarding his claims against any of the movant defendants. The procedures described in Trapp's declarations and the attached copies of Riddick's filings to the Grievance Department are undisputed.

### A.  Nurse Stump.

Riddick's deadline under OP 866.1 to submit a Regular Grievance about Nurse Stump's alleged treatment decisions on February 2, 2019, expired thirty days later on March 4, 2019. His deadline to submit a Regular Grievance about Nurse Stump's treatment decisions on February 5, 2019, expired on March 7, 2019. On February 11, 2019, officials served Riddick with a "Grievance Limitation Letter because he [had] exhibited a pattern of excessive filings and habitual misuse and abuse of the grievance process. He was limited to one informal complaint and one grievance per week until May 12, 2019."[7] Trapp Decl. at ¶ 23, ECF No. 73-1.

---

[7] Riddick filed a Regular Grievance challenging the February 11, 2019, Grievance Limitation Letter as improper. A Level I response on May 9, 2019, determined the Regular Grievance to be unfounded, and that ruling was upheld in the Level II response. Furthermore, defendants present evidence that Riddick had previously been placed on a grievance limitation at least once, beginning in August 2011; at that time, an official conducted a personal interview with Riddick concerning the Grievance Limitation. Therefore, in February 2019, Riddick was well aware of the types of grievance usage that would result in having his access limited.

On February 5, 2019, Riddick submitted Informal Complaint #00298, complaining that on February 2, 2019, Nurse Stump failed to bring him to the medical unit, to put him on the doctor's sick call list, or to provide him with an inhaler after he had been sprayed with O.C. spray on February 1, 2019. A nurse responded on February 12, 2019. On February 18, 2019, Riddick filed a Regular Grievance based on Informal Complaint #00298. This Regular Grievance was rejected at intake because Riddick had exceeded his grievance limitation for that week.

On February 18, 2019, Riddick submitted Informal Complaint #00356, complaining that on February 5, 2019, Nurse Stump failed to bring him to the medical unit or place him on the doctor's sick call list. A nurse wrote a response on February 21, 2019. Riddick waited to file a Regular Grievance about Informal Complaint #00356 until July 15, 2019. It was rejected at intake because the thirty-day filing window had closed. That intake decision was upheld on appeal.

On June 30, 2019, Riddick submitted Informal Complaint #1285 regarding Nurse Stump's failure to provide treatment after he was sprayed with O.C. spray on February 1, 2019. A nurse provided a response on July 8, 2019. Riddick submitted a Regular Grievance on this issue on July 17, 2019, that was rejected at intake because the filing period had expired. The intake decision was upheld on appeal.

It is undisputed that within thirty days of Nurse Stump's assessments of him on February 2 and 5, 2019, Riddick did not file a Regular Grievance that was accepted at intake as properly filed. As such, Riddick did not pursue any of his claims against Nurse Stump through all the available levels of review for a Regular Grievance under OP 866.1 as required to comply with the exhaustion requirement under § 1997e(a).

Riddick has filed an unverified pleading titled "motion for summary judgment for Linda Stump," ECF No. 101, which the court construes as his response in opposition to Nurse Stump's

9

summary judgment motion.[8] He essentially argues that he took every effort he could to exhaust. He states that after receiving the response to Informal Complaint #00356 in late February 2019, he attached it to a Regular Grievance on the same issues and submitted it to the Grievance Department. He alleges that he waited months before the Regular Grievance was returned to him, and then he submitted it on appeal to the regional administrator. He asserts that he thus pursued the highest level of appeal on his claim that Nurse Stump denied him medical care after he was sprayed with O.C. spray on February 1, 2019. An appeal of the intake decision is not proper exhaustion, however. OP 866.1 plainly provides that exhaustion requires an inmate to submit a <u>timely</u> Regular Grievance and to pursue the finding on the merits of that Regular Grievance through the available review stages, which Riddick failed to do.

Moreover, Riddick did not sign and date the Regular Grievance related to Informal Complaint #00356 until July 17, 2019, long after the expiration of the thirty-day filing periods for any claim against Nurse Stump regarding the assessments she did of Riddick on February 2 and 5, 2019. Trapp Decl. Ex. B, at 62. Riddick offers no reason for this lengthy delay. Because the Regular Grievance was thus untimely when Riddick prepared it, he had already failed to properly follow the primary step of the grievance procedure even before he submitted it to the Grievance Department.[9]

---

[8] The court notes that Riddick's so-called summary judgment motion does not provide any affidavit or documentary evidence regarding the merits of his claims against Nurse Stump, nor does it show that no material fact remains in dispute as to those claims. Rather, his motion focuses solely on Nurse Stump's exhaustion defense. Even if he could disprove her exhaustion defense, however, that accomplishment would not establish that Nurse Stump violated his constitutional rights as required for him to win a summary judgment motion. Thus, the court will deny Riddick's summary judgment motion, but will consider his arguments therein as a response in opposition to Nurse Stump's motion.

[9] Furthermore, the responses written on the back page of this Regular Grievance do not support Riddick's allegation that grievance officials delayed returning the document to him. The response finding the Regular Grievance to be untimely filed is dated July 25, 2019. Riddick's appeal of that intake decision had to be submitted within five days of the response, and the denial of his appeal, written on the bottom of the page, is dated August 2, 2019.

Stump also provides evidence that the grievance procedure was not unavailable to Riddick. Riddick's Grievance Limitation that began on February 11, 2019, did not prevent him from filing a timely Regular Grievance related to his claims against her. Before the Grievance Limitation began, Riddick had several days to file an unlimited number of Informal Complaints about his encounters with Nurse Stump on February 2 and 5, 2019. During the week beginning Monday, February 11, 2019, Riddick did not file any Regular Grievance that was accepted as properly filed. Instead, he waited until the week beginning February 18, 2019, and filed seven Regular Grievances at once, six of which were rejected as exceeding his weekly limit, including his Regular Grievance about Informal Complaint #00298. In the week beginning Monday, February 25, 2019, Riddick submitted one Regular Grievance that was rejected for insufficient information and did not count toward his weekly limit. Later that week, Riddick could have properly resubmitted his Regular Grievance about Informal Complaint #00298, but he failed to do so. He also did not submit any Regular Grievance during the week beginning March 4, 2019. See Trapp Decl. ¶¶ 23-27, ECF No. 73-1.

Moreover, as stated, to show that an administrative remedy was not available to him, Riddick must show that "through no fault of his own, [he] was prevented from availing himself of it." Moore, 517 F.3d at 725. Riddick cannot make this showing based solely on the Grievance Limitation, because it resulted from his previous abusive use of the grievance procedure, and the restriction did not bar him from filing administrative remedies, but merely limited the number he could file each week. "Courts have held inmates are not prevented from exhausting their administrative remedies by being on grievance restrictions," under circumstances where inmates under a restriction "[are] not completely prevented from filing or pursuing any grievance at all."

11

Rucker v. Stirling, No. 1:19-310-MGL-SVH, 2020 WL 5984435, at *4 (D.S.C. Mar. 6, 2020)[10] (citing Pearson v. Taylor, 665 F. App'x 858, 867-68 (11th Cir. 2016) (rejecting argument that plaintiff was unable to exhaust administrative remedies where he was prevented from having more than two grievances active at any one time); Cummings v. Crumb, 347 F. App'x 725, 727 (3d Cir. 2009) ("an inmate on grievance restriction is restricted to filing no more than one grievance every 15 days. Thus, being on grievance restriction would not have prevented Cummings from exhausting his remedies")). See also Springer v. Brown, No. 7:12CV00158, 2013 WL 865978, at *3 (W.D. Va. Mar. 7, 2013) (holding that inmate restricted to one informal complaint per week as sanction for his past abusive use of grievance procedures was not prevented from timely exhaustion of medical claims by his personal desire to grieve other claims first; "allowing an inmate to proceed in a case like this . . . would give habitual grievance-procedure abusers like Springer, who inevitably earn restrictions on their access to those grievance procedures, a free pass on the mandatory exhaustion requirements in 42 U.S.C. § 1997e").

For the reasons stated, the court concludes that Riddick has not presented any material disputed fact on which he could persuade a fact finder that he properly exhausted administrative remedies as to his claims against Nurse Stump, or that those remedies were unavailable to him. Accordingly, the court will grant Nurse Stump's motion for summary judgment under § 1997e(a).

### B.  Nurse Fletcher.

Riddick's deadline under OP 866.1 to submit a Regular Grievance about Nurse Fletcher's alleged treatment decision on February 1, 2019—not to refer him to see the doctor—expired thirty

---

[10] In Rucker, the court denied summary judgment under § 1997e(a) upon finding disputed facts as to whether plaintiff as the nonmoving party was suspended from accessing the grievance process altogether for his abuse of the prison's grievance procedures. 2020 WL 5984435, at *4.

days later on March 3, 2019. Trapp's review of Riddick's grievance file did not reflect that during this filing period, he properly filed any Regular Grievance about the February 1, 2019 assessment.

On February 18, 2019, Riddick filed Informal Complaint #00355 about his medical assessment on February 1, 2019, by Nurse Mullins, whom Nurse Fletcher accompanied that day.[11] This filing complained that after Riddick had filed an Emergency Grievance and informed the nurses about being sprayed with O.C. spray and suffering chest pain, heart fluttering, vomiting, and various other symptoms—they did not take him to the medical unit. See Trapp Decl. Ex., at 11, ECF No. 42-1. The response, dated February 21, 2019, indicated that Nurse Mullins had documented "VS [vital signs] all within normal limits." Id. Riddick did not file a Regular Grievance about this February 1, 2019, assessment until July 15, 2019. It was rejected at intake because the thirty-day filing period had expired, and the intake decision was upheld on appeal.

As already discussed, an appeal of an intake decision does not constitute exhaustion of available procedures under OP 866.1. Moreover, Riddick does not establish that the grievance procedures were unavailable to him, merely because he was under a Grievance Limitation during part of February and March 2019. Thus, the court concludes that Riddick has not presented any material disputed fact on which he could persuade a fact finder that he properly exhausted administrative remedies as to his claim against Nurse Fletcher, or that those remedies were unavailable to him. Accordingly, the court will grant summary judgment for Nurse Fletcher under § 1997e(a).

---

[11] Informal Complaint #00355 did not mention Nurse Fletcher by name as a participant in the February 1, 2019, medical assessment. However, this fact alone would not have prevented Riddick from attaching that Informal Complaint to a timely Regular Grievance and proceeding to properly exhaust administrative remedies as to the event, including Nurse Fletcher's alleged role in it. See, e.g., Jones v. Bock, 549 U.S. 199, 217 (2007) (holding that PLRA does not "impose[ ] a 'name all defendants' requirement" for properly filed grievances).

### C.  NP Ball and Nurse McCoy.

Riddick's deadline to submit a Regular Grievance about NP Ball's rescheduling his chronic care visit on February 6, 2019, expired on March 8, 2019.  His deadline to submit a Regular Grievance about the treatment decisions NP Ball and Nurse McCoy made during his medical evaluation on February 14, 2019, expired on March 16, 2019.  Riddick would also have had to file Informal Complaints early during these thirty-day filing periods to allow staff to respond in time for him to submit timely Regular Grievances with the Informal Complaints attached.  Trapp's grievance file review indicates that before the filing deadlines expired on March 8 and 16, 2019, Riddick did not file Regular Grievances related to his claims against NP Ball and Nurse McCoy in this case.

Riddick did file Informal Complaint #00357 on February 18, 2019, complaining about his chronic care visit being rescheduled from February 6 to February 14, 2019.  He complained that NP Ball did not provide him with an inhaler.  Resp. Ex. A, ECF No. 50.  Riddick does not dispute the defendants' evidence that the record includes no evidence showing Riddick filed a Regular Grievance before the March 16, 2019 filing deadline about NP Ball's actions on February 6 and 14, 2019.

On June 30, 2019, almost four months after the grievance deadlines expired, Riddick submitted Informal Complaint #01285, complaining that after he was sprayed with O.C. spray on February 1, 2019, despite his asthma, NP Ball and Nurse McCoy failed provide him with an inhaler or to x-ray his chest.  He stated that he still did not have an inhaler in June 2019.  A Red Onion nurse responded that Riddick would be scheduled to see a provider to discuss his asthma and indicated that a chest X ray performed on April 12, 2019, was normal.  Dissatisfied with that response, on July 17, 2019, Riddick submitted a Regular Grievance on the same issues that was

rejected at intake because the filing period had expired.  Riddick appealed that intake decision, but the regional ombudsman upheld it.  See Trapp Decl. Ex., at 17-19, ECF No. 42-1.

Trapp states that Riddick filed no other Informal Complaints or Regular Grievances about treatment of the injuries he received on February 1, 2019, by NP Ball or Nurse McCoy.  Based on this evidence, NP Ball and Nurse McCoy contend that Riddick failed to exhaust available administrative remedies as to his claims against them.

To the extent that Riddick argues exhaustion based on his appeal of the intake decision rejecting his Regular Grievance dated July 17, 2019, he is mistaken.  Riddick also argues that the thirty-day deadline in OP 866.1 to file a Regular Grievance about a delay of medical care should not begin to run until he has received the requested care.  This argument fails under the terms of OP 866.1 itself and the nature of the claims Riddick has asserted against the defendants.  OP 866.1(VI)(A)(1) requires grievances to be submitted "within 30 calendar days from the date of [the] occurrence/incident or discovery of the occurrence/incident," not the day when a complaint or problem is resolved.  Riddick knew of his complaints about the medical decisions NP Ball and Nurse McCoy made on February 6 and 14, 2019, on the day that those decisions were made.  Thus, these dates triggered the thirty-day filing period under OP 866.1 for Riddick to file a Regular Grievance on these complaints.  Because Riddick did not file a Regular Grievance within thirty days after these dates, he failed to properly exhaust these claims for purposes of § 1997e(a).

Finally, Riddick has not demonstrated that the grievance procedures were unavailable to him so as to preclude summary judgment under § 1997e(a).  The Grievance Limitation against Riddick in early 2019 did not prevent him from filing Informal Complaints or Regular Grievances; it merely limited him to filing only one of each of these remedies each week for ninety days.  After this restriction began on February 11, 2019, Riddick still had multiple opportunities to file timely

Informal Complaints and Regular Grievances about the medical decisions that NP Ball and Nurse McCoy made concerning his alleged medical needs on February 1, 2019.[12]

Based on the foregoing, the court concludes that Riddick has presented no material disputed fact on which he could show that he properly exhausted administrative remedies as to his claims against NP Ball and Nurse McCoy, or that remedies were unavailable. Accordingly, these defendants are entitled to summary judgment as a matter of law under § 1997e(a).

### III.

For the reasons stated, the court will grant the defendants' motions for summary judgment based on Riddick's failure to exhaust available administrative remedies as required by § 1997e(a) before filing this lawsuit. As it is clear from the record that Riddick could not now exhaust administrative remedies under the VDOC procedure as to the claims against these defendants regarding the challenged, past treatment decisions, the court will dismiss his claims against them with prejudice under § 1997e(a). The court will also deny Riddick's pleading titled motion for summary judgment. An appropriate order will enter herewith. The case will continue as to Riddick's claims against other defendants.

The clerk is directed to send copies of this memorandum opinion and the accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This  29th  day of March, 2021.

_____
Senior United States District Judge

---

[12] Riddick asks the court to consider the fact that he suffers from mental disorders. He has offered no evidence here, however, indicating that his mental disorders hindered him from properly following the steps of the grievance procedure.